# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

BRANDON PINKSTON, )
On behalf of himself and )
all others similarly situated, )
)
               Plaintiffs, )
)
v. )
) Case No. 11-CV-2498-JAR
WHEATLAND ENTERPRISES, INC., )
)
               Defendant. )
_____)

## MEMORANDUM AND ORDER

On August 31, 2011, Plaintiff Brandon Pinkston, on behalf of himself and all others similarly situated, filed a complaint against Defendant Wheatland Enterprises, Inc, which had employed him as a driver for its private car service. Plaintiff Glenn Lickteig, a similarly situated Driver employed by Defendant, filed his consent to join this case on September 7, 2011.[1] In Count I, Plaintiffs allege that Defendant failed to pay them and other drivers the minimum wage and overtime premiums they were due, in violation of § 216(b) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq. In Count II, Plaintiffs allege that Defendant failed to properly pay them and other drivers for all hours worked, failed to properly pay them and other drivers for overtime, and failed to keep accurate records of all hours worked by employees, in violation of Mo. Rev. Stat. § 290.500, *et seq.* Finally, in Count III, Plaintiffs allege that Defendant failed to properly pay them and other drivers by inappropriately deducting certain expenses from their compensation, in violation of the Kansas Wage Payment Act (KWPA), K.S.A. § 44-314, and that

---

[1]Doc. 3.

Defendant has a policy and practice of failing to compensate the drivers and inappropriately deducting monies from their compensation in violation of K.S.A. § 44-319(a).

On August 10, 2012, Plaintiffs filed a Motion for Rule 23 Class Certification (Doc. 31), seeking certification of a class for Plaintiffs' Counts II and III pursuant to Fed. R. Civ. P. 23, and seeking designation of Plaintiff Brandon Pinkston as the class representative. The motion is fully briefed and the Court is prepared to rule. As described more fully below, the Court grants the motion for class certification.

**I.      Legal Standards**

Fed. R. Civ. P. 23 governs class actions in federal court. The Court possesses significant latitude in deciding whether or not to certify a class.[2] And whether a case should be allowed to proceed as a class action is an intensely fact-based question that is fraught with practical considerations.[3] In deciding whether the proposed class meets the requirements of Rule 23, the Court may accept Plaintiffs' substantive allegations as true, but it "need not blindly rely on conclusory allegations which parrot Rule 23 requirements [and] may . . . consider the legal and factual issues presented by [a] plaintiff's complaint[]."[4] The Court must conduct a "rigorous analysis" to ensure that Plaintiffs' putative class meets the requirements of Rule 23,[5] although

---

[2]*Vallario v. Vandehey*, 554 F.3d 1259, 1264 (10th Cir. 2009) (citing *Shook v. Bd. of Cnty. Comm'rs,* 543 F.3d 597, 603 (10th Cir. 2008)).

[3]*See Reed v. Bowen*, 849 F.2d 1307, 1309 (10th Cir. 1988).

[4]*See J.B. ex rel. Hart v. Valdez*, 186 F.3d 1280, 1290 n.7 (10th Cir. 1999) (citation omitted).

[5]*D.G. ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1194 (10th Cir. 2010) (quotations and citations omitted).

the "Court is free to decide this motion on solely the pleadings."[6] "Frequently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim. That cannot be helped."[7] The Court's analysis of the certification issue "involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action."[8]

As the party seeking class certification, Plaintiffs must show "under a strict burden of proof" that their putative class meets the requirements of Rule 23.[9] Plaintiffs must first satisfy all four prerequisites of Rule 23(a) by showing that (1) the class is so numerous that joinder of all members is impracticable, (2) questions of law or fact are common to the class, (3) Plaintiffs' claims or defenses are typical of the claims or defenses of the class and (4) Plaintiffs will fairly and adequately protect the interests of the class.[10] These requirements are more commonly known as numerosity, commonality, typicality, and adequacy of representation. If the requirements of Rule 23(a) are met, Plaintiffs must then show that their case fits within one of the categories described in Rule 23(b).[11] In this case, Plaintiffs seek to certify the class under Rule 23(b)(3).

## II. Background

---

[6] *Brown v. J.P. Allen Co.*, 79 F.R.D. 32, 35 (N.D.Ga. 1978) (citing *Huff v. N. D. Cass Company of Alabama*, 485 F.2d 710, 713 (5th Cir. 1973); *see Klay v. Humana, Inc.*, 382 F.3d 1241, 1253 n.6 (11th Cir. 2004); Reeb v. Ohio Dept. of Rehabilitation and Correction, 81 F. App'x 550, 555 (6th Cir. 2003) (holding that a district court may determine the permissibility of class certification "based on the pleadings alone where they set forth sufficient facts").

[7] *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011).

[8] *Id.* (citations omitted).

[9] *Trevizo v. Adams,* 455 F.3d 1155, 1162 (10th Cir. 2006) (citing *Reed v. Bowen*, 849 F.2d 1307, 1309 (10th Cir. 1988)).

[10] Fed. R. Civ. P. 23(a).

[11] *See* Fed. R. Civ. P. 23(b).

Consistent with the standard articulated above, the following facts are based on the allegations in Plaintiffs' Complaint as supplemented by certain evidence submitted by Plaintiffs. Plaintiffs allege that Defendant employed them as drivers. Defendant is a Kansas Corporation doing business in the State of Kansas and has employed approximately 140 other Drivers during the statutory period, who work out of its business locations in Kansas and Missouri. Defendant operates under two trade names, Overland Limousine, and Plaza Limousine, and provides chauffeured transportation to clients in the Kansas City metropolitan area. Drivers are responsible for traveling to the client, picking them up, greeting them, and safely transporting them. Drivers also assist with client luggage and maintaining the vehicles in a clean and tidy fashion. Occasionally, drivers transport the vehicles for service and vehicle maintenance.

There appears to be little disagreement between the parties on Defendant's policies for driver payment, in light of the 30(b)(6) deposition with Diane Forgy, who owns Wheatland,[12] a copy of Defendant's employment guidelines,[13] and other employment documents. The policy outlined in these sources tracks the policies as explained in the Plaintiffs' affidavits.

The drivers are all subject to the same policies, which have remained generally consistent over the last several year. During the deposition, Forgy agreed that nothing distinguishes how one driver is paid from another driver and that all the drivers are paid generally pursuant to the same compensation policies.[14] She further agreed that drivers' job duties do not differ from

---

[12] Doc. 37.

[13] *Id.* at 169.

[14] *Id.* at 95.

individual to individual and that they are generally consistent for all drivers.[15] There are approximately 140 current and former drivers who have worked for Defendant during the statutory period.[16] Drivers' compensation structure has not changed in the past three years, except that Defendant no longer reduces Drivers' pre-negotiated gratuity for credit card fees.[17]

Drivers are paid based on the job, with a minimum two paid hours, and their hours accrue from when they pick the client up until they drop the client off at a destination.[18] Divers assisting in cleaning and maintaining the vehicles, and are responsible for vehicle inspections when they pick up a car for a job and when they return the car after the job.[19] Drivers are not paid for the time spent inspecting, cleaning and preparing the vehicle.[20] Further, drivers are expected to arrive at the client location at least 10-15 minutes prior to the scheduled pick-up time,[21] and they are not paid for this time.[22] Drivers may be required to wait at a location between jobs, and they are not paid for this time.[23] Drivers are paid a sub-minimum wage base rate of between $5.50

---

[15]*Id.*

[16]*Id.* at 43.

[17]*Id.* at 55.

[18]*Id.* at 43, 74.

[19]*Id.* at 44, 169–70.

[20]*Id.* at 44, 68–69.

[21]*Id.* at 33.

[22]*Id.* at 43, 74.

[23]*Id.* at 41.

and slightly more than $7.00 per hour,[24] although they are also paid tips.[25] Drivers do not clock in and out when they pick up and drop off the vehicle, and Defendant does not track Drivers' actual work time beyond the time from pick-up to drop-off.[26] Drivers are not paid an overtime premium.[27]

Drivers' paychecks are subject to deductions by Defendant; the gratuity was, until recently, subject to reduction to pay credit card processing fees,[28] and additional deductions may be made for failure to comply with uniform policy,[29] or to pay for cell phone calls,[30] unreturned or lost/damaged company property,[31] disciplinary measures,[32] and background checks or drug tests.[33]

### III. Analysis

*A. Class Definitions*

As a first step, the Court must define the class before proceeding to analysis. Defining the class is critical because it "identifies the persons (1) entitled to relief, (2) bound by a final

---

[24]*Id.* at 45

[25]*Id.* at 26.

[26]*Id.* 80, 85.

[27]*Id.* at 45.

[28]*Id.* at 59.

[29]*Id.* at 179.

[30]*Id.* at 170.

[31]*Id.* at 171.

[32]*Id.* at 59.

[33]*Id.* at 168 (noting that "the new hire cost for drug testing, DOT physical, background check and pager, totaling $115.00 will be [the driver's] responsibility to pay and may be deducted from [the driver's] last check, if [the driver's] employment terminates prior to three months").

judgment, and (3) entitled under Rule 23(c)(2) to the 'best notice practicable' in a Rule 23(b)(3) action."[34] The Court must ensure that the definition is "precise, objective, and presently actionable."[35] The Court may alter the proposed definition as appropriate for the certification analysis.[36] Here, the proposed class is:

> all current and former Drivers who were employed by Defendant from August 31, 2008 to the present, who were compensated on a piece rate basis, at a rate less than the minimum wage, who were not paid overtime compensation when they worked more than forty hours in a workweek and/or whose compensation has been deducted to pay for credit card charges, lost or damaged property and/or for disciplinary reasons.[37]

*B. Rule 23(a) Requirements*

*1. Numerosity*

To meet their burden with respect to the numerosity element, Plaintiffs must establish "that the class is so numerous as to make joinder impracticable."[38] There is "no set formula to determine if the class is so numerous that it should be so certified."[39] A court may use common sense in making assumptions to support a finding of numerosity.[40] Because it is such a fact-specific inquiry, the district court is granted wide latitude in making this determination.[41] Here,

---

[34]*Sibley v. Sprint Nextel Corp.*, 254 F.R.D. 662, 670 (D. Kan. 2008) (quoting Manual for Complex Litigation § 21.222, at 270 (4th ed. 2005)).

[35]*Id.*

[36]*Garcia*, 255 F.R.D. at 684.

[37]Doc. 32 at 21.

[38]*Trevizo*, 455 F.3d at 1162 (citation omitted).

[39]*Id.* (citing *Rex v. Owens ex rel. Oklahoma,* 585 F.2d 432, 436 (10th Cir. 1978)).

[40]*Pueblo of Zuni v. United States*, 243 F.R.D. 436, 444 (D. N.M. 2007).

[41]*Id.* (citation omitted).

the parties agree that the potential class consists of approximately 140 current and former drivers; this number is high enough that joinder is impracticable. In response, Defendant argues that there is no evidence that anyone other than Plaintiffs alleges injury from Defendant's payment policies and wishes to join the suit; the Court gives this argument little weight. The potential class is an opt-out class, so any members who do not wish to bring suit need not do so. And the potential class members may have many reasons why they have not expressed an interest in bringing suit on their own, including a lack of knowledge, fear, and concerns related to expense. These concerns are mitigated in a Rule 23 context, and the lack of expressed interest thus does not affect the numerosity analysis.[42]

### 2. *Commonality*

Plaintiffs must also show questions of law or fact common to the class. The class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only."[43] To justify departure from that rule "a class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members."[44] Plaintiffs' claims must depend upon a common contention "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."[45] Therefore, it is not the raising of common "questions" that matters, but rather "the capacity of a classwide proceeding to

---

[42]*See Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 244 (2d Cir. 2011); *Arkansas Ed. Ass'n v. Bd. of Ed. of Portland, Ark. School Dist.*, 446 F.2d 763, 765–66 (8th Cir.1971).

[43]*Wal-mart Stores v. Dukes,* 131 S. Ct. 2541, 2011 WL 2437013, *6 (June 20, 2011) (citations omitted).

[44]*Id*. (citations omitted).

[45]*Id.*

generate common *answers* apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers."[46]

"[C]ommonality requires only a single issue common to the class. Thus, [t]he commonality requirement is met if plaintiffs' grievances share a common question of law or of fact."[47] Rule 23(a)(2) "requires the Court to find whether common questions of law or fact exist—not whether they predominate, as Rule 23(b)(3) requires."[48]

> Here, Plaintiffs identify the common questions of law as:
>
>> 1) Whether Wheatland violated the FLSA, MMWMHL and/or the KWPA by unlawfully classifying its Drivers as exempt and denying them minimum wages and overtime compensation; 2) Whether Wheatland violated the FLSA, MMWMHL and/or the KWPA by failing and refusing to compensate its Drivers for time spent in between pick-ups and drop-offs, time spent cleaning, inspecting and preparing the vehicle and time spent beyond the two hours scheduled for trips; 3) Whether Wheatland violated the FLSA, MMWMHL and/or the KWPA by unlawfully deducting its Drivers' compensation to pay for credit card fees, lost or damaged property or other deductions, including, but not limited to disciplinary deductions.[49]

Defendant contests the second allegedly common question, but does not contest the first or third. Accepting for the sake of argument that the second allegedly common question is not a common question of law or fact, the first and the third common questions are adequately supported by the Plaintiffs' allegations and the other documents submitted by the parties, and establish common questions of law or fact. This meets the requirements for commonality.

---

[46]*Id.* (citation omitted) (emphasis in original).

[47]*J.B. ex rel. Hart v. Valdez*, 186 F.3d 1280, 1288 (10th Cir. 1999).

[48]*Freebird, Inc. v. Merit Energy Co.*, No. 10–1154–KHV–JPO, 2011 WL 13638 at *3 (D. Kan. Jan. 4, 2011).

[49]Doc. 32 at 15.

*3. Typicality*

The typicality analysis focuses only on Plaintiff Pinkston, the proposed class representative, who must prove that his claims are typical of those of the putative class, as required by Rule 23(a)(3). Therefore the class representative must "be a member of the proposed class, have interests coextensive with and not antagonistic to the interests of the class, and have suffered the same injury as the class members."[50] The class representative's claims may differ factually so long as they arise from the same events or course of conduct and are based on the same legal or remedial theory.[51] "The typicality requirement dovetails with the Rule 23(a)(4) adequacy of representation requirement . . . [and] . . . [a]typical claims potentially create antagonistic interests."[52] "[D]iffering fact situations of class members do not defeat typicality under Rule 23(a)(3) so long as the claims of the class representative and class members are based on the same legal or remedial theory."[53]

Defendant argues that, because Plaintiff Pinkston worked only six weeks, and never more than forty hours, he is not a typical driver. But this is a distinction without a difference. Although Plaintiff Pinkston may not be "typical" in a dictionary sense, the claims of Plaintiff Pinkston and the potential class members are based on the same legal or remedial theory, making Plaintiff Pinkston typical in a Rule 23 sense.

Defendant also argues that Plaintiff Pinkston's interests are potentially adverse to current

---

[50]*Commander Props. Corp. v. Beech Aircraft Corp.,* 164 F.R.D. 529, 535 (D. Kan. 1995) (citations omitted).

[51]*Id.* (citation omitted).

[52]*Id.* at 536.

[53]*Adamson v. Bowen*, 855 F.2d 668, 676 (10th Cir. 1988).

10

drivers who benefit from Defendant's pay policies in that they may be paid for more time than their trips actually take. Defendant suggests that current drivers who are experienced and efficient may not want to change the current payment structure in which they are paid a minimum of two hours, plus gratuity, per trip when the vast majority of their trips take one hour or less. Defendant argues that the potentiality of this conflict is enough to deny class certification in this case. But the Court will not give weight to this potential conflict; if the payment system Defendant now uses does not violate the law, then the system need not change and the current drivers would not be affected. Thus the only potential conflict arises if the system violates the law, and if it violates the law, the current drivers do not have a legitimate interest in continuing to be paid in an illegal manner. This potential "conflict" does not suggest to the Court that Plaintiff Pinkston is not typical of the potential class members, in a Rule 23 sense.

### 4. Adequacy of Representation

The final Rule 23(a) requirement is that the named plaintiffs and their counsel will adequately represent the class. Rule 23(a)(4) involves two issues: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class? Defendant does not challenge the adequacy of Plaintiffs' counsel to serve as class action counsel, and Defendant's conflict of interest argument is addressed above.

### C. Rule 23(b) Requirements

A Rule 23(b)(3) class may be maintained if the prerequisites of Rule 23(a) are met, and if:

the court finds that the questions of law or fact common to class
members predominate over any questions affecting only individual
members, and that a class action is superior to other available
methods for fairly and efficiently adjudicating the controversy. The
matters pertinent to these findings include:
> (A) the class members' interests in individually controlling
> the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the
> controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the
> litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.[54]

*1. Predominance*

The predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."[55] The requirement is met "if there is a common nucleus of operative facts relevant to the dispute and those common questions represent a significant aspect of the case which can be resolved for all members of the class in a single adjudication."[56] "If the proposed class members will need to present evidence that varies from member to member in order to make out a prima facie case, then it is an individual question. If, on the other hand, the same evidence will suffice for each member to make out a prima facie case, then it is a common question."[57]

As noted, Plaintiffs have identified three common questions of law, and Defendant does not contest that the first question (Whether Wheatland violated the FLSA, MMWMHL and/or

---

[54] Fed. R. Civ. P. 23(b)(3).

[55] *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997).

[56] *Eatinger v. BP Am. Prod. Co.*, 271 F.R.D. 253, 261 (D. Kan. 2010); *Sibley v. Sprint Nextel Corp.*, 254 F.R.D. 662, 670 (D. Kan. 2008).

[57] *Garcia v. Tyson Foods, Inc.*, 255 F.R.D. 678, 690 (D. Kan. 2009) (citing *Blades v. Monsanto Co.*, 400 F.3d 562, 566 (8th Cir. 2005); *Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 311 (3d Cir. 2008)).

the KWPA by unlawfully classifying its Drivers as exempt and denying them minimum wages and overtime compensation) nor the third question (Whether Wheatland violated the FLSA, MMWMHL and/or the KWPA by unlawfully deducting its Drivers' compensation to pay for credit card fees, lost or damaged property or other deductions, including, but not limited to disciplinary deductions) are common questions of law. Instead, Defendant argues that individual fact questions override these common questions. In particular, Defendant argues that the issue of whether each driver actually performed pre- and post-trip inspection and cleaning, how long that process took, and how early the driver arrived at the pickup location varies not only from driver to driver, but from trip to trip, and should preclude class certification. But these kinds of questions are secondary to the primary issue in this litigation, which is whether or not Defendant's method of payment violates state and federal law, making Defendant liable to the drivers. The Court concludes that this overarching issue predominates over all of the secondary issues related to any given individual's damages.[58]

    2. *Superiority*

"The requirement that a class action be the superior method of resolving the claims insures that there is no other available method of handling the litigation which has greater practical advantages."[59] Plaintiffs argue that, if individual drivers brought their own suits, each driver would assert the same claims, using the same evidence and seeking the same remedy. Plaintiffs suggest that it would be inefficient and redundant for both the parties and the Court to proceed on other than a class basis, and further suggest that individual suits risk inconsistent

---

[58]*Garcia*, 255 F.R.D. at 689, 691.

[59]*Id.*

13

holdings. Defendant briefly argues that individual questions will predominate over common issues, making individual suits a superior method of resolving potential claims, but the Court has addressed the predominance argument above. After reviewing the pleadings, the Court concludes that a class action is the superior method of resolving these claims.

*D. Appointment of Counsel*

An order certifying a class must also appoint class counsel that will adequately represent the interests of the class.[60] The Court must consider the work counsel has done in identifying or investigating potential claims in the action, counsels' experience in handling class actions and other complex litigation and claims of the type asserted in the present action, counsels' knowledge of the applicable law, and the resources counsel will commit to representing the class.[61] As Plaintiffs note, they are represented by the named partners from two law firms. Counsel, Mr. Hodgson and Mr. Osman, have worked together on numerous class actions and are both focused almost exclusively on wage and hour class and collective cases over the last 6 years, and the Court is confident that these counsel are well qualified to handle class action litigation involving the FLSA, the KWPA, and the MMWMHL. The Court finds that these counsel will adequately represent the interests of the class. These counsel, then, are appointed as joint class counsel for this action.

**IT IS THEREFORE ORDERED BY THE COURT THAT** Plaintiffs' Motion for Rule 23 Class Certification (Doc. 31), is granted.

**IT IS FURTHER ORDERED BY THE COURT THAT** Brandon Pinkston is

---

[60]Fed. R. Civ. P. 23(c)(1)(B), (g)(1).

[61]Fed. R. Civ. P. 23(g)(1)(C).

designated as class representative.

**IT IS FURTHER ORDERED BY THE COURT THAT** Plaintiffs' counsel is appointed to act as class counsel in this matter.

**IT IS FURTHER ORDERED BY THE COURT THAT** the parties will meet and confer concerning the form and substance of a proposed notice, and the parties will submit a joint proposed notice within 28 days of the date of this order. On the parties' motion, this deadline may be extended to avoid confusion with the notice of collective action in this case.

**IT IS SO ORDERED.**

Dated: March 27, 2013

 S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE